UNITED STATES BANKRUKPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

DORIS E. RUSSELL,                                    Case No. DG 11-01098
                                                     Hon. Scott W. Dales
                    Debtor.                           Chapter 7
_____/

ASTERA CREDIT UNION f/k/a Auto Body
Credit Union,

                    Plaintiff,                       Adversary Proceeding
                                                     No. 11-80223
v.

DORIS E. RUSSELL,

                    Defendant.
_____/


OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

I. INTRODUCTION

        This matter is before the court on the Complaint of Astera Credit Union (the "Credit

Union") against Chapter 7 Debtor Doris E. Russell ("Ms. Russell") in which the Credit Union

seeks an order excepting its debt from discharge under 11 U.S.C. § 523(a)(2)(A).  The court

conducted a bench trial in Grand Rapids, Michigan on January 23, 2012 at which the Credit

Union appeared through counsel and Ms. Russell appeared *pro se*.  At the trial, the court heard

testimony from four witnesses, and admitted nine exhibits, without objection.  This opinion

constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P.

52 made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. For the following reasons, the court will enter judgment for the Credit Union.

## II. JURISDICTION

The court has jurisdiction over Ms. Russell's bankruptcy case pursuant to 28 U.S.C. § 1334(a). The case and all related proceedings, including this adversary proceeding, have been referred to the United States Bankruptcy Court pursuant to L.Civ.R. 83.2(a) (W.D. Mich.) and 28 U.S.C. § 157(a). The court concludes that it has authority to enter a final judgment in this matter which it regards as a core proceeding. 28 U.S.C. § 157(b)(2)(I). At the pretrial conference, the parties consented to the court's entering final judgment, notwithstanding the possible applicability of *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

## III. ANALYSIS

The Credit Union seeks to except a debt that Ms. Russell admittedly owes arising from her purchase of a 2006 Ford F-150 pickup truck (the "Truck"). To fund the purchase, Ms. Russell borrowed $19,934.58 from the Credit Union and traded-in a Dodge Caravan titled in her name but used by her father. As Ms. Russell credibly explained at trial, she purchased the Truck for her father, Charles Russell, just as she previously did with the Caravan. She admitted that at the time she signed the promissory note, she had no intention of paying the Credit Union for the Truck because she expected that her father would repay the loan, again as he did with the Caravan.

According to Ms. Russell, the salesperson at the Harold Ziegler Ford Dealership in Lowell, Michigan (the "Dealership") structured the transaction so that it appeared she was financing the car because Ms. Russell's father's credit precluded him from qualifying for a car loan in his own name. In order to complete the purchase, Ms. Russell signed a credit application

in her own name, which the Dealership forwarded to the Credit Union as part of the latter's indirect lending program. *See* Exh. 1. In the credit application, which Ms. Russell signed, she falsely adopted the following statement:

> [X] You are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested.

Exh. 1. Ms. Russell later explained to the court that she was relying on her father to repay the loan, contrary to this representation. Such a statement is material to a lender who reasonably needs to know that the person who agrees to make payments is the person who has the incentive to do so. In other words, it is reasonable to assume that a borrower will be more inclined to make payments in order to keep a vehicle that she is actually using, than to make payments to keep collateral for a third party's benefit. This, in part, prompted the Credit Union to address this issue on the credit application, and made Ms. Russell's misrepresentation material to the Credit Union's decision to extend credit.

After the Credit Union approved Ms. Russell's application, Mr. Van Dyken called Ms. Russell's father to say, "Charlie, you got yourself a truck."

Testimony from the Credit Union's loan officer, Darcy Krause, established that the Credit Union relied upon the application and a credit report that it reviewed in deciding to lend Ms. Russell the money. After the Credit Union advised the Dealership that it would fund the loan, Ms. Russell signed financing documents including a promissory note (Exh. 3), security agreement, an agreement to provide insurance, and an application for a Michigan title and registration on or about October 12, 2010 at the Dealership. Ms. Russell also purchased a warranty for the Truck.

Ms. Krause confirmed what is patent from the documents admitted at trial: the documents nowhere revealed the real nature of the transaction, namely that Ms. Russell was purchasing the Truck for her father, and that she did not intend to either use or pay for it unless something happened to her father.  Ms. Krause believed that the Credit Union would look to its borrower— Ms Russell—for payment.  For her part, however, Ms. Russell agreed with Mr. Van Dyken that she needed to conceal her father's role if her father was going to get the Truck.  She knew that the documents submitted to the Credit Union were not true, but she signed them anyway.[1]

The Credit Union funded the loan and Ms. Russell purchased the Truck from the Dealership. Within a month after purchasing the Truck, and before the first payment to the Credit Union became due, Ms. Russell concluded that she needed to seek protection under the Bankruptcy Code.  She called the Credit Union to make arrangements to put the Truck loan in her father's or mother's name, but the Credit Union refused.  Accordingly, Ms. Russell (or her father) returned the Truck to the Dealership, from whom the Credit Union repossessed it.

After giving notices required under Article 9 of the Uniform Commercial Code, the Credit Union sold the Truck and applied the proceeds to reduce Ms. Russell's debt.  According to the credible testimony from the Credit Union's collection manager, Kathleen M. Disher, Ms. Russell owes $10,793.54 on account of the loan she obtained to purchase the Truck.

At the first meeting of creditors held under 11 U.S.C. § 341 in Ms. Russell's case, and again at the trial, Ms. Russell candidly admitted that she had no intention of repaying the

---

[1] At trial, a former employee of the Dealership, Marlin Jeffrey, Jr., testified that the Dealership's files contained no documents corroborating Ms. Russell's version of events and that Mr. Van Dyken would not have played the part that Ms. Russell says he played in the deception.  The court gives less weight to Mr. Jeffrey's testimony than to Ms. Russell's because he did not work in the Dealership's location in Lowell at the relevant time, and because it would be surprising if the Dealership's records reflected any attempt to disguise from the Credit Union the true nature of the transaction.  Moreover, the Credit Union did not offer testimony from the one former employee—Mr. Van Dyken—who would have had the most to say about his role.  The court credits Ms. Russell's version of events.

indebtedness.  Indeed, the evidence established that at no time did Ms. Russell or her father make any payments on account of the loan, although she did surrender the Truck to the Credit Union.

Although the court does not doubt Ms. Russell's testimony to the effect that the Dealership's salesperson proposed structuring the transaction to hide its true nature, that testimony does not undercut the fact that Ms. Russell herself played a crucial role in persuading the Credit Union to part with the loan proceeds.  She provided documentation representing falsely that she intended to repay the debt, when in fact she had no such intention.  In other words, the unsavory business practices that Ms. Russell described on the part of the Dealership's salesperson do not excuse Ms. Russell's own role in deceiving the Credit Union.

To except the debt from discharge under 11 U.S.C. § 523(a)(2)(A), the Credit Union must prove, by a preponderance of the evidence, that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). The court finds that Ms. Russell misrepresented the transaction and her intent to repay, and that the Credit Union justifiably relied on the representations when it funded the loan and parted with $19,934.58. Ms. Russell intended to deceive the Credit Union because she, and the Dealership's salesperson, believed that the Credit Union would not make the loan if it knew the true nature of the transaction.  Ms. Krause confirmed that supposition at trial.  The Credit Union's reliance was the proximate cause of its loss.

In addition, the record did not permit the court to infer an agency relationship between the Credit Union and the Dealership that would justify imputing the salesperson's knowledge to the Credit Union.

The court further finds, pursuant to its ancillary jurisdiction, that Ms. Russell owes the Credit Union $10,793.54, after giving her credit for the proceeds of the Article 9 disposition. *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993) (bankruptcy court has authority to render a money judgment on a nondischargeable debt). Accordingly, the debt in that amount shall be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## IV. CONCLUSION

Ms. Russell was a candid and eminently credible witness at trial, but her testimony established that she played a significant and causative role in perpetrating a fraud against the Credit Union by inducing it to make a loan that it would not otherwise have made.  Although the Dealership's former salesperson may have encouraged Ms. Russell to participate in the dishonest transaction, his complicity does not excuse her independent role in the deception.

Accordingly, the court will enter a judgment establishing that Ms. Russell owes the Credit Union $10,793.54, and that the debt shall survive her discharge under 11 U.S.C. § 523(a)(2)(A).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Stephen L. Langeland, Esq., Doris E. Russell, the United States Trustee, and all parties requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 25, 2012**



Scott W. Dales
United States Bankruptcy Judge